NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1097

JACK O. CARTNER
and MOTRIM, INC.,

Plaintiffs-Appellants,

v.

ALAMO GROUP, INC.,

Defendant-Appellee.

Philip J. Moy Jr., Fay Sharpe LLP, of Cleveland, Ohio, argued for plaintiffs-appellants. With him on the brief was Alexander P. Tsarouhas.

Steven M. Auvil, Benesch Friedlander Coplan & Aronoff, LLP, of Cleveland, Ohio, argued for defendant-appellee. With him on the brief were Bryan A. Schwartz and Benjamen E. Kern.

Appealed from: United States District Court for the Northern District of Ohio

Senior Judge Lesley Wells

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1097

JACK O. CARTNER
and MOTRIM, INC.,

Plaintiffs-Appellants,

v.

ALAMO GROUP, INC.,

Defendant-Appellee.

Appeal from the United States District Court for the Northern District of Ohio in case No. 1:07-CV-1589, Senior Judge Lesley Wells.

_____

DECIDED: June 17, 2009

_____

Before NEWMAN, MAYER, and SCHALL, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

DECISION

Plaintiff-Appellants Jack O. Cartner and Motrim, Inc. (together "Cartner") appeal the final judgment of the United States District Court for the Northern District of Ohio in favor of Defendant-Appellee Alamo Group, Inc. ("Alamo") that claims 5 and 12 of Cartner's U.S. Patent No. 5,197,284 ("the '284 patent") are invalid for failure to meet the written description requirement of 35 U.S.C. § 112. <u>Cartner v. Alamo Group, Inc.</u>, No. 1:07CV1589 (N.D. Ohio Oct. 29, 2008). The court's entry of judgment and concurrent

dismissal of all other claims and counterclaims in the case followed the court's construction of the claim limitation "said flow control orifice being constantly operative." Cartner v. Alamo Group, Inc., No. 1:07CV1589, 2008 WL 2169005 (N.D. Ohio May 21, 2008) ("Claim Construction"). Based on that construction, the parties stipulated that claims 5 and 12 of the '284 patent are invalid under § 112. Because we conclude that the district court erred in its claim construction, we vacate the judgment of invalidity and remand the case to the district court for further proceedings.

DISCUSSION

I

Mr. Cartner is the named inventor on the '284 patent and is president of Motrim, Inc., the exclusive licensee of the patent. The '284 patent is directed towards "a deceleration circuit for a hydraulic motor." '284 patent col.1 ll.15–19. Such a circuit typically is used in "power mowers or ditchers or the like utilized in road maintenance equipment." Id. When power to the hydraulic motor is shut off, two potential problems can occur: (1) "the grass cutting blade or ditching blade . . . continues to freewheel" and "does not come to a stop very quickly," potentially causing damage to surroundings; or (2) "the motor . . . come[s] to a precipitous stop," placing great strain on the motor and the fasteners that connect the cutting blades. Id. col.1 ll.25–49. The deceleration circuit of the current invention attempts to solve these problems by "gradually bring[ing] a hydraulic motor to a stop" after it is shut off. Id. col.2 ll.54–60.

Cartner sued Alamo for infringing several claims of the '284 patent. Only claims 5 and 12, however, are at issue in this appeal. Both claims, of which claim 5 is representative and reproduced below, contain the limitation in dispute—i.e., "said flow

control orifice being constantly operative." Id. col.8 ll.65–66; col.10 ll.25–26.  Claim 5 reads as follows:

> 5.  A hydraulic motor deceleration system comprising:
>
> a pump;
>
> a hydraulic motor;
>
> a hydraulic circuit interconnecting said pump and said motor, said circuit comprising:
>
> a first hydraulic fluid line extending between said pump and said motor,
>
> a first control valve located in said first fluid line for controlling the communication of fluid between said pump and said motor,
>
> a second hydraulic fluid line interconnecting said control valve and said motor,
>
> a third hydraulic fluid line interconnecting said first and second hydraulic lines,
>
> a relief valve located in said third fluid line, and
>
> a flow control orifice located in said third fluid line, said flow control orifice being constantly operative, said third fluid line allowing a flow of hydraulic fluid from said second fluid line to said first fluid line even when said control valve is in a closed position, as regulated by said relief valve, and wherein said flow control orifice limits the speed with which such flow takes place.

Id. col.8 ll.48–67.

After briefing and a Markman hearing, the district court construed numerous limitations in the claims of the '284 patent, including the "said flow control orifice being constantly operative" limitation.  See Claim Construction, 2008 WL 2169005, at *7–15. In the Claim Construction order, the court rejected Cartner's proposed construction of the disputed limitation, which relied on the '284 patent's specification and prosecution history.  The court determined that the specification was not instructive and that the statements in the prosecution history were "not explanatory."  Id. at *14.  In contrast, the

court found Alamo's proposed construction, which relied on a dictionary definition, more appropriate. Id. The court also thought that Alamo's proposed construction provided meaning to every word in the claim—specifically, the word "even." Id. at *15. For those reasons, the district court accepted Alamo's proposed construction and construed the limitation "said flow control orifice being constantly operative" as meaning that "the flow control orifice continuously slows fluid when the first control valve is in the open or closed position." Id.

Subsequently, Cartner and Alamo stipulated that, according to the district court's construction, claims 5 and 12 of the '284 patent are invalid for failure to meet the written description requirement of 35 U.S.C. § 112. Accordingly, the district court entered a judgment of invalidity in favor of Alamo and dismissed all other claims and counterclaims. Cartner has timely appealed; we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

II

Cartner argues that the district court improperly construed the pertinent limitation because it discounted both the specification and prosecution history, instead relying heavily on the dictionary definitions of "constantly" and "operative." According to Cartner, the district court's construction, which requires the "flow control orifice" to slow fluid flow even when there is no fluid flow in the third fluid line, is inconsistent with the '284 patent's specification. Cartner also contends that the prosecution history provides a clear definition of "said control orifice being constantly operative" that is inconsistent with the district court's construction.

Alamo responds that the district court, by relying on the plain meaning of claims 5 and 12, arrived at the correct construction. In addition, Alamo contends that that the district court's construction properly "gives meaning to all the terms of the claims." Appellees' Br. 30. According to Alamo, this is so because the district court's construction requires the continuous slowing of fluid when the first valve is open or closed and, thus, takes into account the word "even" in the claim language. In addition, Alamo argues that the district court did not ignore the prosecution history, but instead found it unclear and "not explanatory." Under those circumstances, Alamo argues, the court was correct to discount the prosecution history.

III

We agree with Cartner. First, we think the district court's construction of "said flow control orifice being constantly operative" is contrary to the '284 patent's specification. The specification discloses that the "flow control orifice" is located in the third fluid line and "regulates the rate at which hydraulic fluid flowing through the third hydraulic fluid line **40** can reenter the first fluid line **14**." '284 patent col.4 ll.15–30; fig.1. The "flow control orifice" can only regulate fluid flow when the third fluid line **40** contains fluid. However, regardless of whether the first control valve is open or closed, there are times when the third fluid line **40** does not contain fluid—namely, when the relief valve **42** is in the closed position, thereby preventing fluid from flowing into the third fluid line **40**. Id. fig.1. Until relief valve **42** is in the open position, it prohibits fluid flow in the third fluid line **40**. Significantly, both parties agreed to the construction of "as regulated by a relief valve" in the third fluid line to mean the "[r]elief valve controls whether and how much fluid may flow." Claim Construction, 2008 WL 2169005, at *7 (emphasis added).

In other words, because the relief valve controls whether fluid may flow into the third fluid line, there are instances when there is no fluid flow in the third fluid line. Thus, because the third fluid line does not always contain fluid, the district court's requirement that the flow control orifice continually slow fluid "when the first control valve is in the open or closed position" (regardless of whether there is fluid flow in the third fluid line) is contrary to the '284 patent's specification.

Of particular importance to the proper claim construction in this case is the prosecution history of the '284 patent. See, e.g., Mangosoft v. Oracle Corp., 525 F.3d 1327, 1332–33 (Fed. Cir. 2008) (finding further support for the proper construction in the prosecution history). Contrary to the district court's conclusion, the statements and amendments in the prosecution history are highly explanatory about the proper construction of "said flow control orifice being constantly operative." Specifically, the claims that would become claims 5 and 12 initially did not include the language "constantly operative" to describe the claimed "flow control orifice." In due course, the examiner rejected those claims in view of U.S. Patent No. 4,194,365 granted to Stoufflet et al. ("Stoufflet"). Stoufflet shows a "flow control orifice" (called an "adjustable constriction **53**") located in a two-position "solenoid valve **48**." Thus, the "adjustable constriction" in Stoufflet is only placed in the third fluid line, and therefore is only "operative," when the solenoid valve **48** is activated. See Stoufflet col.3 ll.54–67; fig.1. In other words, Stoufflet's "flow control orifice" (i.e., "adjustable constriction **53**") is not permanently in the fluid line, but instead must be switched into the fluid line at certain operation times. Contrastingly, the "flow control orifice" of claims 5 and 12 in the '284 patent is permanently located in the third fluid line and does not need to be switched

into that line at certain times. See '284 patent fig.1 item 44 (disclosing that flow control orifice **44** is not located in relief valve **42**). Cartner's prosecuting attorney added the "constantly operative" limitation to reflect this difference, arguing that Stoufflet failed to teach a "flow control orifice, which is constantly operative, rather than being solenoid controlled." Thus, Cartner's prosecuting attorney did not add the term "constantly operative" to indicate that the "flow control orifice" "continuously slows fluid," as concluded by the district court. Rather, "constantly operative" was added during prosecution to explicitly describe the difference between the claims and the prior art— namely, that the "flow control orifice" was not located in a solenoid valve. Accordingly, the district court's construction of "constantly operative" is inconsistent with the meaning it was given during prosecution.

For the foregoing reasons, we hold that the district court erred in its construction of the limitation "said flow control orifice being constantly operative" in claims 5 and 12. Taking into account the claim language, the specification, and the prosecution history as explained above, we construe "said flow control orifice being constantly operative" to mean "the flow control orifice continuously slows fluid flow when there is fluid flow in the third fluid line, whether the first control valve is in the open or closed position." Because we have revised the district court's claim construction, we vacate its judgment of invalidity of claims 5 and 12 pursuant to § 112. We therefore remand the case to the district court for further proceedings consistent with the claim construction we have set forth above.

VACATED and REMANDED