**INTIRTOOL, LTD. (doing business as Mass–Tex, Ltd.), Plaintiff–Appellant,**

v.

**TEXAR CORPORATION (doing business as ToolPro, Inc.), Defendant–Appellee.**

No. 03–1394.

United States Court of Appeals, Federal Circuit.

DECIDED: May 10, 2004.

Walter D. Ames, Law Office of Walter D. Ames, of McLean, Virginia, argued for plaintiff-appellant.

Lea H. Speed, Baker, Donelson, Bearman, Caldwell & Berkowitz, of Memphis, Tennessee, argued for defendant-appellee. With her on the brief was Robert B. Ken-

nedy, Baker, Donelson, Bearman, Caldwell & Berkowitz, of Atlanta, Georgia.

Before LOURIE, SCHALL, and LINN, Circuit Judges.

LINN, Circuit Judge.

In this patent infringement case, Intirtool, Ltd. ("Intirtool") appeals from the judgment of the United States District Court for the Eastern District of Texas. *Intirtool, Ltd. v. Texar Corp.*, No. 4:00cv118 (E.D.Tex. Mar. 31, 2003). The district court found that Intirtool's United States Patent No. 5,022,253 ("the '253 patent") was invalid for failure to satisfy the written description requirement of 35 U.S.C. § 112, paragraph 1, and concluded that the patent was also unenforceable because Intirtool had committed inequitable conduct during its prosecution. *Id.* at 13–14. The district court also concluded that damages that accrued prior to the filing of Intirtool's lawsuit were barred by the equitable doctrine of laches. *Id.* at 17. The district court either clearly erred or abused its discretion in reaching each of these conclusions. Accordingly, we reverse the judgment of the district court and remand for further proceedings.

## BACKGROUND

The '253 patent is directed to punch pliers used for punching and connecting overlapping sheets of sheet metal. It issued on September 9, 1986; the sole independent claim is reproduced below.

1. A hand-held punch pliers for simultaneously punching and connecting overlapping sheet metal such as at the corners of overlapping ceiling tile grids comprising:

a die handle;

a hollow die affixed to said die handle;

a punch handle;

a punch affixed to said punch handle and sized for insertion along an arcuate path into said hollow die;

a joint means for pivotably connecting said die handle to said punch handle such that said die and punch are movable in arcuate paths about said joint into and out of punching engagement by manually squeezing and releasing said handles;

a die jaw integrally formed at one end of said die handle; means for connecting said die to said die jaw;

a punch jaw integrally formed at one end of said punch handle; and means for connecting said punch to said punch jaw;

wherein said hollow die comprises:

a tubular die body having an open die end sized for receiving said punch as it is moved in said arcuate path about said joint;

a die base portion through which said die is replaceably connected to said die jaw; and

a die face formed around said open end of said tubular die body toward said punch for abutment against said sheet metal being punched and having a radially outwardmost point of contact and a radially inwardmost point of contact;

wherein said die face is formed at an angle in the range of about zero to ten degrees as measured between a first imaginary line drawn through the center of said joint and said radially outwardmost point on said die face and a second imaginary line which passes through said outwardmost point of contact on said die face and through said radially inwardmost point of contact on said die face where a ten degree angle results in a gap between said inwardmost point of contact and said first imaginary line; wherein said punch comprises:

solid cylindrical punch body having a punch end corresponding sized smaller than said tubular die body portion for non-binding entry into said die as it is moved in said arcuate path about said joint;

a punch base portion for replaceably attaching said punch to said punch jaw; and a face formed at said punch end for making a semicircular shaped cut in said sheet metal to be punched which semicircle is more than 180 but less than 360 and for bending the sheet metal plug formed by said cut substantially at an imaginary cord on the uncut sheet metal between the ends of said semicircular shaped cut.

During the prosecution of the patent before the U.S. Patent and Trademark Office, the applicant added Figure 6, which purports to show the overlapping connection made by the punch between pieces of sheet metal that is set forth in the preamble to Claim 1.

FIG. 6

Intirtool sold the patented tools to Texar Corporation ("Texar"), a tool distributor, in 1992–1993. Texar resold the tools to retailers. In July 1993, Texar informed Intirtool that a very similar tool was available from other suppliers for a lower price and asked Intirtool to meet the lower price. Intirtool refused, and Texar stopped buying the tools from Intirtool. Texar began to resell the competing tools at an indeterminate later date. Intirtool apparently took no steps to enforce its patent until the filing of this suit in April 2000.

After a bench trial, the district court held that the '253 patent was invalid for failure to satisfy the written description requirement, because the specification "does not describe hand-held pliers for simultaneously punching and connecting overlapping sheet metal." *Intirtool,* slip op. at 13. The court also held that the patent was unenforceable because the applicant engaged in inequitable conduct, in that it represented to the PTO that "the described tool simultaneously punched holes and connected ceiling grids, knowing that this assertion was false." *Id.* at 14. Finally, the court held that the infringement suit was barred by laches, because Intirtool should have known that Texar was reselling the competing tools within the six-year period before the suit was filed, and Intirtool had not shown that the delay in bringing suit was reasonable. *Id.* at 16–17.

## ANALYSIS

### A. Standard of Review

Whether the preamble of a claim is "necessary to give life, meaning, and

vitality" to the claim and is thus a limitation of that claim is a question of law that is reviewed without deference. *Catalina Mktg., Int'l v. Coolsavings.com,* 289 F.3d 801, 807–08 (Fed.Cir.2002). A party alleging that a patent is invalid for failure to comply with the written description requirement has the burden of establishing by clear and convincing evidence that the requirement was not met, in light of the presumption of validity. *Cordis Corp. v. Medtronic Ave, Inc.,* 339 F.3d 1352, 1364 (Fed.Cir.2003). Compliance with the written description requirement is a question of fact, reviewed for clear error on appeal following a bench trial. *Lampi Corp. v. Am. Power Prods.,* 228 F.3d 1365, 1378 (Fed.Cir.2000).

■ A determination that a patent is unenforceable on the basis of inequitable conduct is reviewed for an abuse of discretion; the underlying factual findings are reviewed for clear error. *ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 547 (Fed.Cir. 1998).

■ A finding that a suit is barred by laches is reviewed for an abuse of discretion; an abuse of discretion may be found when the decision rests on an erroneous interpretation of the law or on clearly erroneous factual underpinnings, or absent such errors, when the court's decision represents an unreasonable judgment in weighing relevant factors. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1039 (Fed.Cir.1992) (en banc).

## B. Written Description

The district court construed the "hand-held punch pliers for simultaneously punching and connecting overlapping sheet metal" of the preamble of claim 1 as a limitation of the claim. It reached this conclusion after finding that Intirtool had "repeatedly represented to the patent office that the tool was capable of simultaneously punching and connecting ceiling grids." *Intirtool,* slip op. at 6–7. The court then found "by clear and convincing evidence that the punch pliers of the construction shown and described in the '253 patent do punch holes in overlapped sheets of metal, but do not connect the sheets." *Id.* at 7. On the basis of its resulting finding that "the written description in the '253 patent does not contain an adequate description of the claimed invention," the district court concluded that the '253 patent was invalid for failure to comply with the written description requirement of 35 U.S.C. § 112, paragraph 1. *Id.* at 13.

### 1. Preamble as a Limitation

■ Intirtool argues that the district court had an incorrect understanding of the "claimed invention," which rendered its invalidation of the '253 patent clearly erroneous. Specifically, Intirtool maintains that the court erred in interpreting the preamble of claim 1, "[a] hand-held punch pliers for simultaneously punching and connecting overlapping sheet metal such as at the corners of overlapping ceiling tile grids," as a limitation of the invention. Intirtool notes that the only reference to "connecting" in the claim is in the preamble and that the structure of the tool is fully set forth in the body of the claim. It argues that the reference to "connecting" is simply an intended purpose of the tool and the district court's contrary holding on claim construction was legal error that rendered its finding of invalidity clearly erroneous. Texar responds that whether a preamble is limiting is determined in part on the basis of "the invention as described in the specification and illuminated in the prosecution history." *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.,* 98 F.3d 1563, 1572–73 (Fed.Cir. 1996). Texar points to references in the specification to a "connecting tab ...

formed from the sheet metal [that] remains securely connected to the parent sheet metal and ... is inserted through the punched hole simultaneously with the punching." '253 patent, col. 4, ll. 4–7. Texar also points to places in the prosecution history where the applicant characterized its invention as, inter alia, "a hand-held punch pliers ... which simultaneously punches and connects overlapping sheet metal ceiling tile grids." "[C]lear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation," *Catalina Mktg.*, 289 F.3d at 808–09 (Fed.Cir.2002), and Texar argues that such is the case here.

█ We disagree. In general, a claim preamble is limiting if "it recites essential structure or steps, or if it is necessary to give 'life, meaning, and vitality' to the claim." *Id.* at 808 (quoting *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1305 (Fed.Cir.1999)). However, if the body of the claim "describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention," *id.* at 809, the preamble is generally not limiting unless there is "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art," *id.* at 808.

Here, the claimed tool was described in claim 1 in complete and exacting structural detail, including the precise parameters of the cut that the face of the tool makes in sheet metal: "a face ... for making a semicircular shaped cut in said sheet metal to be punched which is more than 180 but less than 360 ." '253 patent, col. 6, ll. 15–17. Texar cites the discussion in the specification of "a connecting tab ... [that] remains securely connected to the parent sheet metal" in the context of a discussion of Figure 6 and contends that this shows

the preamble to be a limitation of claim 1. We find this argument unpersuasive and unhelpful in resolving the question of whether the preamble gives "life, meaning, and vitality" to the claim. Here, the preamble does not recite any "additional structure or steps underscored as important by the specification," *Catalina Mktg.*, 289 F.3d at 808, either in the passage Texar cites or elsewhere. Nor do we find in the prosecution history clear reliance specifically on the preamble, rather than on the structural limitations set forth in the body of the claim, which if present might provide a basis for transforming the preamble into a claim limitation. *See id.* ("[C]lear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation."). Either of the statements from the prosecution history that Texar cites could be interpreted as relying not on the "simultaneously punching and connecting" language of the preamble, but rather on the specific structural limitations set forth in the body of claim 1, such as "bending the sheet metal plug formed by said cut substantially at an imaginary cord on the uncut sheet metal between the ends of said semicircular shaped cut." '253 patent, col. 6, ll. 18–21. For example, Intirtool's description of its invention as a "hand-held punch pliers ... which simultaneously punches and connects," which Texar cites, is followed immediately by a recitation of the structural limitations set forth in the independent claim:

> Appellant's unique combination of substantially flat die face and punch face arrangement for arcuate movement and oriented within a specified range of angular relationships with respect to the pivot point unobviously results in a lightweight hand operated punch pliers for simultaneously punching and connecting

such overlapping sheet metal ceiling tile grids.

In context, the references to "punching and connecting" in the prosecution history appear to simply recite "benefits or features" of the claimed invention, and we see no "clear reliance on those benefits or features as patentably significant." *Catalina Mktg.*, 289 F.3d at 809. In short, the preamble adds nothing to this highly detailed claim and thus cannot be considered to give "life, meaning, and vitality" to it. *See Kropa v. Robie*, 38 C.C.P.A. 858, 187 F.2d 150, 152 (1951). We hold that the preamble is not a limitation of claim 1.

### 2. Evidentiary Basis for Written Description Finding

■ Intirtool challenges the evidentiary basis for the district court's finding that the '253 patent was invalid for failure to comply with the written description requirement. It admits that the pliers it proffered as made in accordance with the '253 written description "were not proved to function as do the pliers of Fig. 6 of the drawings." Intirtool argues, however, that the district court erred in reading the embodiment shown in Figure 6 into the claims. *See Intirtool*, slip op. at 11 ("There was no crimping effect bending back the uncut portion of the holes as demonstrated in Figure 6 of the patent.").

We agree with Intirtool that there is no basis to conclude that the language of the claim reciting "bending the sheet metal plug formed by said cut substantially at an imaginary cord on the uncut sheet metal between the ends of said semicircular shaped cut" should be limited to the configuration shown in Figure 6. The district court characterized that configuration as having "the portion of the metal not cut by the punching operation [bent] back down and flat with the metal surface so as to securely connect the two pieces of metal,"

*id.* at 10–11, and relied on it in making its written description finding. The district court appears to have based this construction on its conclusion that the "simultaneously punching and connecting" language of the preamble was a limitation of the claims. *See id.* at 13 (describing "the claimed invention" as "hand-held pliers for simultaneously punching and connecting overlapping sheet metal"). That conclusion was erroneous, as described above, and the district court was for that reason not justified in applying the preamble language, as interpreted in the light of Figure 6, as a claim limitation in making its written description finding. The district court's reliance on this erroneous construction of the language of claim 1 renders its finding that the '253 patent is invalid for failure to "contain an adequate written description of the claimed invention" clearly erroneous.

### C. Inequitable Conduct

■ "A ruling of inequitable conduct in the PTO must be supported by clear and convincing evidence of material misrepresentation, made with the intent to deceive or mislead the patent examiner." *Seiko Epson Corp. v. Nu–Kote Int'l, Inc.*, 190 F.3d 1360, 1367 (Fed.Cir.1999). The district court based its conclusion that Intirtool had engaged in inequitable conduct on its view that Intirtool had, during the prosecution of the '253 patent, "repeatedly stated, and indeed stressed, that the described tool simultaneously punched holes and connected ceiling grids, knowing that this assertion was false." *Intirtool*, slip op. at 14. As stated above, we take a different view of Intirtool's statements in the prosecution history; the references to "punching and connecting" in the prosecution history reference merely preamble features of the invention. Additionally, they are not clearly incorrect. Indeed, the district court found that a loose connection

was established. Under these circumstances, we do not believe that Intirtool's statements either rise to the required "threshold level of materiality" or are false. *See PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1319 (Fed.Cir.2000); *see also Hoffmann– LaRoche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1359 (Fed.Cir.2003) ("Inequitable conduct requires *misrepresentation* or omission *of a material fact*, together with an intent to deceive the PTO." (emphasis added)). Because the district court clearly erred in finding that Intirtool's statements were material misrepresentations, we conclude that the district court abused its discretion in ruling that Intirtool had committed inequitable conduct.

### D. Laches

 Finally, Intirtool challenges the district court's holding that its pre-filing damages were barred by laches. The laches defense has two underlying elements: first, the patentee's delay in bringing suit must be "unreasonable and inexcusable," and second, the alleged infringer must have suffered "material prejudice attributable to the delay." *A.C. Aukerman Co.*, 960 F.2d at 1028. A presumption of laches arises "where a patentee delays bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer's activity." *Id.* In this case, the district court's conclusion rested on its finding that Intirtool should have known in July 1993 that Texar "was going to continue to sell the pliers but would acquire them from another vendor because the price was cheaper." *Intirtool*, slip op. at 17. Because this was more than six years before the filing of the lawsuit in May 2000, the court held that a presumption of laches was created, and Intirtool had not demonstrated that the delay in filing suit was reasonable. *Id.* The district court further

found that the "substantial expense" Texar incurred in promoting the allegedly infringing tool showed that it had been materially prejudiced by the delay in filing suit. *Id.*

Intirtool challenges this holding on the ground that the district court clearly erred in starting the laches clock in July 1993. We agree. Texar's chief executive officer, Rick Dawsey, testified that he began buying the patented pliers from Intirtool in 1992 for resale to retailers. After another manufacturer quoted him a lower price on a very similar tool, Dawsey had a conversation on July 27, 1993, with Paulette Sullivan, the officer at Intirtool with whom he had previously dealt. He told Sullivan that he was "perfectly satisfied" with Intirtool and "had no real desire to change vendors but [he] was under price pressure. And [Dawsey] asked her if she would meet the competitive price and she said no." Texar then stopped ordering from Intirtool and began placing orders with the competitive manufacturer. It is unclear from the record when the first order was placed with the competitive manufacturer. There was no further contact between Texar and Intirtool until the filing of this lawsuit in April 2000.

 The district court concluded that this record supported a finding that Intirtool "should have known that [Texar] was going to continue to sell the punch pliers but would acquire them from another vendor because the price was cheaper." *Intirtool*, slip op. at 17. The district court thus concluded that a presumption of laches arose. *Id.* We cannot agree. Although our precedent is clear that the patentee's constructive knowledge of an infringer's behavior can suffice to start the laches clock, it is equally clear that the patentee must have actual or constructive knowledge of an act of infringement that gives

rise to a legal claim before that clock begins to run against the patentee. *See A.C. Aukerman,* 960 F.2d at 1034 ("The six years for laches begins with a patentee's knowledge of infringement and counts forward."). In this case Intirtool cannot be charged with such knowledge. Dawsey's conversation with Sullivan indicated only that he had a potential alternative supplier, and that he asked for a reduction in price and was refused. There was no further contact between the parties. This conversation was insufficient to provide Intirtool with constructive knowledge of any act that might give rise to an infringement claim against Texar. Indeed, as of the date of the conversation, it was clear that Intirtool had no such claim: Texar was still Intirtool's "perfectly satisfied" customer. At most, the conversation notified Intirtool that Texar contemplated the possibility of reselling competing tools at some future date. There is no indication that Intirtool should have known at any point thereafter that Texar had acted on this plan. *Cf. Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 839 F.2d 1544, 1552 (Fed.Cir.1988) (ascribing constructive knowledge of defendant's allegedly infringing activities to patentee as of the date it named defendant as an infringer in an earlier case), *overruled on other grounds by A.C. Aukerman,* 960 F.2d at 1038. To bar Intirtool's recovery under these circumstances would be to place on it the burden of policing Texar's subsequent conduct because of Dawsey's speculative comments during a single phone conversation. We are unwilling to stretch the concept of due diligence so far. Because the district court clearly erred in finding that Intirtool should have known that it had an infringement claim more than six years prior to the filing of suit, its ruling that Intirtool's suit was barred by laches constituted an abuse of discretion.

## CONCLUSION

The district court's error in construing the preamble of claim 1 as a limitation rendered its written description finding clearly erroneous and its inequitable conduct conclusion an abuse of discretion. Because the district court clearly erred in starting the laches clock before Intirtool could have known that it had a claim for infringement, its conclusion that damages that accrued prior to the filing of Intirtool's lawsuit were barred by laches was an abuse of discretion.

*REVERSED AND REMANDED.*