# United States Court of Appeals for the Federal Circuit

2009-1241

KONINKLIJKE PHILIPS ELECTRONICS N.V.,

Plaintiff-Appellant,

v.

CARDIAC SCIENCE OPERATING COMPANY,

Defendant-Appellee.

J. Michael Jakes, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for plaintiff-appellant. With him on the brief were James F. Sherwood; and Lily Lim, of Palo Alto, California.

Eric H. Chadwick, Patterson, Thuente, Skaar & Christensen, P.A., of Minneapolis, Minnesota, argued for defendant-appellee. With him on the brief was Aaron W. Davis.

Appealed from: United States District Court for the Western District of Washington

Judge Marsha J. Pechman

# United States Court of Appeals for the Federal Circuit

2009-1241

KONINKLIJKE PHILIPS ELECTRONICS N.V.,

Plaintiff-Appellant,

v.

CARDIAC SCIENCE OPERATING COMPANY,

Defendant-Appellee.

Appeal from the United States District Court for the Western District of Washington in case no. 08-CV-543, Judge Marsha J. Pechman.

_____

DECIDED:   January 5, 2010

_____

Before MICHEL, Chief Judge, FRIEDMAN, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

Koninklijke Philips Electronics N.V. ("Philips") appeals from the United States District Court for the Western District of Washington's sua sponte dismissal of Philips' civil suit against Cardiac Science Operating Co. ("Cardiac Science").  Pursuant to 35 U.S.C. § 146, Philips sought review in the district court of the Board of Patent Appeals and Interferences' (the "Board") interference decision.  Philips timely appealed the district court's order dismissing Philips' complaint with prejudice.  We reverse and remand with instructions as outlined below.

BACKGROUND

Philips is the assignee of U.S. Patent No. 6,241,751 (the "'751 patent"). The '751 patent discloses a cardiac defibrillator that delivers electrical shocks to a patient's heart during ventricular fibrillation. Carlton B. Morgan and three other engineers invented the defibrillator and applied for a patent on April 22, 1999. '751 patent at [22]. The inventors obtained a patent for the defibrillator on June 5, 2001, assigning their interest to Agilent Technologies, Inc., Philips' predecessor in interest. Id. at [45], [73]. The '751 patent is an improvement patent on a previous cardiac defibrillator, U.S. Patent No. 5,749,904 (the "Gliner patent").

According to Philips, the '751 patent discloses a defibrillator that delivers electrical shock based on two parameters. First, the defibrillator uses multiple capacitor configurations to measure a patient's transthoracic impedance. Id. at col.1 ll.39–45; col.2 ll.53–64. The patent uses the term transthoracic impedance or patient impedance to mean the electrical impedance of the thoracic tissues, including the heart, as measured between the defibrillator's electrodes. Second, the defibrillator uses the capacitors to deliver varying energy levels measured in joules that an operator can select for delivering electric shock. Id. at col.2 ll.53–64. In sum, the '751 patent discloses a defibrillator with a set of capacitors arranged according to both "patient impedance and desired energy level." Id. at [57].

On March 6, 1998, Cardiac Science filed a patent application for a multiple-capacitor cardiac defibrillator. Almost a year after the '751 patent issued, Cardiac Science filed a continuation application, No. 10/159,806 (the "Owen application"), on

May 31, 2002. To provoke interference proceedings, Cardiac Science copied claims 1–37 of the '751 patent into the Owen application and claimed an earlier priority date.

The U.S. Patent and Trademark Office ("PTO") declared an interference under 35 U.S.C. § 135(a) between the Owen application and the '751 patent. The Board formulated one count for the interference, which it copied verbatim from claim 15 of the '751 patent and claim 15 of the Owen application. That count reads:

> A method for delivering an impedance-compensated defibrillation pulse to a patient, comprising:
>     measuring a patient impedance of said patient;
>     selecting from a set of configurations in an energy storage capacitor network to deliver an impedance-compensated defibrillation pulse to said patient responsive to said patient impedance; and
>     delivering said impedance-compensated defibrillation pulse to said patient.

This lone count corresponds to '751 patent claims 1–37 and Owen application claims 1–9, 11–13, 15–18, 20–25, 27–30, 32–33, and 38–39. The term "impedance-compensated defibrillation pulse" from the count is at the center of the parties' dispute. Pursuant to its statutory mandate, the Board proceeded to "determine questions of priority of the inventions" disclosed in the '751 patent and the Owen application and "determine questions of patentability." 35 U.S.C. § 135(a) (2006).

During the interference proceedings, Philips filed five preliminary motions in an effort to terminate the proceedings. Three of those motions are relevant to this appeal and are presented below so as to track the Board's reasoning. Note, however, that the motions are not presented in numerical order.

In motion 4, Philips argued, inter alia, that the Owen application was not patentable because it failed to provide an adequate written description as required under § 112, ¶ 1. Philips asserted that the '751 patent narrowly defined the term

"impedance-compensated defibrillation pulse" in its specification as corresponding to "an overall capacitance and charge voltage tailored to the patient impedance <u>and</u> the desired energy level." In contrast, Philips asserted that the Owen specification disclosed "configuring capacitors based only on patient impedance." Because Owen's specification failed to disclose desired energy level as an additional parameter for configuring capacitors, Philips argued that all of Owen's claims except for claim 38 were unpatentable for lack of written description. The Board rejected Philips' argument, opining that "Morgan[, the '751 patent inventor,] has [presented] no basis for construing Owen's claims in light of definitions contained in Morgan's specification." The Board explained that the '751 patent's written description was irrelevant to its analysis under the PTO's interference procedures. The Board cited one regulation in particular as authority to disregard the '751 patent in construing the claim term in the Owen application: "A claim shall be given its broadest reasonable construction <u>in light of the application or patent in which it appears</u>." 37 C.F.R. § 41.200(b) (2009) (emphasis added).

In motion 5,[1] Philips filed a motion expressly contingent on the Board broadly interpreting the term "impedance-compensated defibrillation pulse" to include a capacitor configuration based only on patient impedance, but not based on desired energy level. If the Board so construed the term, Philips argued that Owen's claims 1–4, 13, 15, 20–22, and 39 were unpatentable because the Gliner patent anticipated the claims under § 102 or at least rendered the claims obvious under § 103. The Board dismissed Philips' contingent motion, explaining that the contingency upon which the

---

[1]     Motion 5 is entitled "Morgan Contingent Motion 1" in the record. Philips later renumbered "Morgan Contingent Motion 1" to be motion 5.

motion relied never materialized because the Board had not interpreted the term "impedance-compensated defibrillation pulse."

In motion 2, Philips argued that Owen's claim 38 was unpatentable because the Gliner patent anticipated claim 38 as prior art under § 102 or because the Gliner patent rendered claim 38 obvious under § 103. The Board found it unnecessary to consider the patentability of Owen's claim 38, holding that Philips failed to establish that all of Owen's other claims were unpatentable in motion 4. As long as the Board found that the Owen application had priority over the '751 patent and that at least some of the claims were patentable, the Board opined that determining claim 38's patentability was "not essential for this interference." The Board assumed that the primary examiner could determine whether Owen's claim 38 was anticipated or obvious ex parte after the interference proceeding concluded.

After denying all of Philips' motions, the Board addressed the priority stage of the interference. The Board found in favor of the Owen application for priority and canceled the '751 patent claims 1–37. Philips then promptly filed suit in the United States District Court for the Western District of Washington under § 146.

Philips sought review in the district court of the Board's rulings as to written description, anticipation, obviousness, and priority as raised in motions 2, 4, and 5 and during the priority stage. Shortly after filing its complaint, Philips filed a motion for a claim construction hearing. The court then requested additional briefing on Philips' preliminary motions before the Board and both parties submitted their briefs accordingly. In its last brief before the district court, Philips asserted that if the court denied its motion for a claim construction hearing, "the parties would need to proceed to

trial over the claims raised in Philips' complaint" because "Philips would introduce live testimony."

After the parties submitted their briefs, the court held a hearing to discuss the Board's rulings on Philips' preliminary motions. During that hearing, Philips' counsel advised the court that Philips "would be asking for a trial if there's no claim construction here" to relitigate the five motions before the Board and to argue no interference in fact. Counsel stated that Philips "can introduce evidence, live evidence to this Court at trial. That's what we intend to do if there's no claim construction in the case."

After the hearing, the district court denied Philips' motion for a claim construction hearing and sua sponte dismissed the complaint with prejudice. The district court affirmed all of the Board's decisions, finding that the Board's "reasons for denying or dismissing each motion were grounded in the application of the Board's own procedures and regulations." The order did not address motion 2 before the Board or Philips' claim that the Board erred in determining that the Owen application had priority over the '751 patent. Both parties agree that even though the district court did not explain under which Federal Rule of Civil Procedure it dismissed the complaint, the dismissal was tantamount to sua sponte summary judgment. At the time of dismissal, the court had yet to issue a scheduling order.

Philips timely filed an appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(C).

DISCUSSION

Philips raises three issues on appeal. First, Philips argues that the district court improperly dismissed its complaint with prejudice sua sponte, thereby entering a de facto summary judgment. Second, Philips argues that the district court improperly dismissed its claim that the Board erroneously applied 37 C.F.R. § 41.200(b). Philips asserts that when a patentee challenges the written description of a competing application, the court and Board should interpret claims in light of the original dislcosure. Third, Philips argues that the district court improperly dismissed its claim that the Board erred in denying Philips' contingent motion to find several of the competing applicant's claims anticipated or obvious based on the Gliner patent. We address each of Philips' arguments in turn and reverse the district court on all three issues. We express no opinion, however, on the proper construction of the term "impedance-compensated defibrillation pulse" or on whether the Owen application satisfies 35 U.S.C. § 112, ¶ 1 by providing an adequate written description. [2]

We first address the district court's sua sponte summary judgment. This court reviews a district court's grant of summary judgment de novo. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 563 F.3d 1358, 1365 (Fed. Cir. 2009). "Because this case presents a procedural question not unique to patent law, this court follows the law of the regional circuit from which the case is appealed." Massey v. Del Labs., Inc., 118 F.3d

---

[2]  The district court should note that this court recently heard arguments en banc to consider whether § 112, ¶ 1 contains a separate written description requirement and, if so, what the scope and purpose of that requirement should be. See Ariad Pharms., Inc. v. Eli Lilly & Co., 332 F. App'x 636 (Fed. Cir. 2009) (per curiam) (granting rehearing en banc).

1568, 1572 (Fed. Cir. 1997) (applying Ninth Circuit law to vacate a grant of summary judgment). In this case, Ninth Circuit law applies.

The Ninth Circuit has held that "[a]s a general rule, a district court may not <u>sua sponte</u> grant summary judgment on a claim without giving the losing party ten days' notice and an opportunity to present new evidence as required by Federal Rule of Civil Procedure 56(c)." <u>United States v. Grayson</u>, 879 F.2d 620, 625 (9th Cir. 1989). However, the Ninth Circuit recognizes an exception to the rule. "A district court may grant summary judgment without notice if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the motion.'" <u>Grayson</u>, 879 F.2d at 625 (quoting <u>Waterbury v. T.G. & Y. Stores Co.</u>, 820 F.2d 1479, 1480 (9th Cir. 1987)). After a party has had a full and fair opportunity to present its arguments, summary judgment is only appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, a district court in the Ninth Circuit may enter summary judgment (1) as long as the losing party has had a full and fair opportunity to present arguments and (2) the parties have no genuine dispute as to a material fact.

The district court did not satisfy either standard in this case. First, the district court did not give Philips an opportunity to present its evidence or argument that the '751 patent had priority over the Owen application. Philips brought its action under 35 U.S.C. § 146, which allows the losing party in an interference proceeding to file a complaint in district court to review the Board's interference proceedings and to present new evidence. See <u>Winner Int'l Royalty Corp. v. Wang</u>, 202 F.3d 1340, 1345 (Fed. Cir. 2000) ("Unlike a direct appeal to this court pursuant to 35 U.S.C. § 141, the parties

before the district court [in a § 146 action] are not limited to the evidentiary record before the Board . . . ."). Though the court suggested during the last hearing that it need not consider the merits of the interference if it agreed with the Board's procedural grounds, § 146 grants parties the right to present new testimony and requires the court to review the Board's factual findings. See Winner, 202 F.3d at 1345; Estee Lauder Inc. v. L'Oreal, S.A., 129 F.3d 588, 592 (Fed. Cir. 1997) ("Section 146 actions have been described as a hybrid of an appeal and a trial de novo.").[3] Philips claimed that the Board's priority decision was in error and informed the district court that it intended to present new testimony. Because the district court ignored Philips' request to present new evidence and never heard Philips' argument that the '751 patent had priority, the court did not give Philips a full and fair opportunity to ventilate the issues raised in its complaint and improperly entered summary judgment under Ninth Circuit law. See Grayson, 879 F.2d at 625.

Second, there remains a genuine dispute as to material facts between the parties. For example, the parties still disagree on whether the Owen application contains an adequate written description for the term "impedance-compensated defibrillation pulse" and on whether the Gliner patent anticipates Owen's claim 38.

---

[3] We note that this case does not involve a question of a district court's standard of review in a § 146 action nor whether the standard of review in a § 146 action differs from the standard in a § 145 action. Compare Hyatt v. Doll, 576 F.3d 1246, 1273 (Fed. Cir. 2009) ("[T]he district court must defer to the PTO's fact-finding [in a § 145 action] except where appropriately admitted new evidence conflicts with a fact found by the PTO or presents a new factual issue that the PTO did not consider."), and Agilent Techs., Inc. v. Affymetrix, Inc., 567 F.3d 1379 (Fed. Cir. 2009) ("In Section 146 actions, if the parties present new evidence to the district court that conflicts with the record before the Board, the district court must make de novo factual findings regarding this new evidence."), with Winner, 202 F.3d at 1347 ("We hold that the admission of live testimony on all matters before the Board in a section 146 action . . . makes a factfinder of the district court and requires a de novo trial.").

Cardiac Science argues that Philips failed to inform the district court that it would need to address other issues after ruling on the motion for a claim construction hearing. But Cardiac Science ignores clear statements to the contrary. At the last hearing before the district court, Philips made clear that it "would be asking for a trial if there's no claim construction here." And in its last brief before the district court, Philips asserted that if the court denied its motion for a claim construction hearing, "the parties would need to proceed to trial over the claims raised in Philips' complaint" because Philips would introduce new testimony. Though Philips could have been more explicit in explaining the issues on which it intended to present additional evidence, Philips' complaint and briefs together with Cardiac Science's answer set out the issues on which the parties still have a dispute as to material facts. For example, Philips asserted that the Owen application did not disclose both patient impedance and desired energy level as parameters for delivering electrical shock, pointing to the definition of "impedance-compensated defibrillation pulse" in the '751 patent and the Owen application as evidence. It then alleged in complaint count I that the Board erroneously dismissed its motion that all of Owen's claims except for claim 38 were unpatentable for lack of a written description. In response, Cardiac Science denied Philips' assertions of fact as to written description in its answer. Philips further asserted that the Gliner patent disclosed a defibrillator that configured capacitors based on patient impedance before the Owen application, pointing to documents such as a 1995 defibrillation article, the Gliner patent, and the Owen application as evidence. It then alleged in count I that the Gliner patent anticipated Owen's claim 38 under § 102. In response, Cardiac Science denied Philips' assertions of fact as to anticipation in its answer.

This court has held that genuine issues of material fact as to written description and anticipation preclude summary judgment. See, e.g., Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1332 (Fed. Cir. 2009) (holding that genuine issues of material fact with respect to anticipation, obviousness, and lack of enablement precluded summary judgment); SunTiger, Inc. v. Scientific Research Funding Group, 189 F.3d 1327, 1334 (Fed. Cir. 1999) (holding that a genuine issue of material fact as to written description precluded summary judgment). Because the parties genuinely disputed issues of material fact as to, e.g., written description and anticipation, the district court improperly entered summary judgment.

We next address whether the district court properly affirmed the Board in applying 37 C.F.R. § 41.200(b) to Philips' challenge of the Owen application's written description. Congress has charged the Board with resolving questions of priority of invention in an interference proceeding when more than one party seeks to patent substantially the same subject matter. 3A Donald S. Chisum, Chisum on Patents § 10.09[1][a] (2005). By statute, the Board "shall determine questions of priority of the inventions and may determine questions of patentability." 35 U.S.C. § 135(a) (2006). This court has held that "the Board should decide issues relating to priority and patentability that are fairly raised and fully developed during the interference, despite the permissive language of § 135(a) with respect to patentability issues." In re Gartside, 203 F.3d 1305, 1317 (Fed. Cir. 2000); see also Schulze v. Green, 136 F.3d 786, 791 (Fed. Cir. 1998) ("[B]y combining the two boards, 'all issues of patentability and priority which arise in an interference can be decided in a single proceeding rather than in a series of complicated inter partes and ex partes proceedings.'" (quoting 130 Cong. Rec.

28,065, 28,072 (1984) (statement of Rep. Kastenmeier))); Perkins v. Kwon, 886 F.2d 325, 328 (Fed. Cir. 1989) ("[I]ssues of patentability and priority that have been fully developed before the Board should be resolved by the Board."). Pursuant to § 135(a), the PTO has issued procedural regulations that govern interference proceedings. See, e.g., 37 C.F.R. §§ 41.200–.208 (2009). The Board and district court relied on one of those regulations in deciding Philips' written description challenge on procedural grounds. That regulation governs claim construction in an interference proceeding: "A claim shall be given its broadest reasonable construction in light of the specification of the application or patent in which it appears." 37 C.F.R. § 41.200(b).

This court gives substantial deference to an agency's own interpretation of its rules and will thus accept the Board's interpretation of its rules unless the interpretation "is plainly erroneous or inconsistent with the regulation." Eli Lilly & Co. v. Bd. of Regents of the Univ. of Wash., 334 F.3d 1264, 1266 (Fed. Cir. 2003). Specifically, the court reviews a Board decision "pursuant to the permissive rules governing a patent interference proceeding for abuse of discretion." Id. "An abuse of discretion occurs if the decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) involves a record that contains no evidence on which the Board could rationally base its decision." Id. at 1266–67. The regulation in dispute here raises an issue of law—claim construction. See Markman v. Westview Instruments, 52 F.3d 967, 970–71 (Fed. Cir. 1995), aff'd, 517 U.S. 370, 372 (1996).

A district court reviews issues of law from Board interference proceedings de novo. Winner, 202 F.3d at 1344–45. We, in turn, "review[] the district court's

conclusions of law de novo and findings of fact for clear error." Golden Blount, Inc. v. Robert H. Peterson Co., 365 F.3d 1054, 1058 (Fed. Cir. 2004).

In this case, the district court abused its discretion by basing summary judgment on "an erroneous conclusion of law." Eli Lilly, 334 F.3d at 1266. Philips argued below that all of Owen's claims except for claim 38 were unpatentable for lack of a written description because those claims include the term "impedance-compensated defibrillation pulse," the '751 patent written description defines the term to include both patient impedance and desired energy level, and the Owen application's written description failed to disclose desired energy level. But the district court erroneously concluded that the '751 patent written description was irrelevant. The court erred in holding that the Board can apply 37 C.F.R. § 41.200(b) and disregard the original disclosure when a patentee challenges an applicant's written description in an interference proceeding. The court's decision is contrary to the holdings of Agilent Technologies, Inc. v. Affymetrix, Inc., 567 F.3d 1366 (Fed. Cir. 2009) and In re Spina, 975 F.2d 854 (Fed. Cir. 1992). Based on its understanding of § 41.200(b), the court further erred in assuming that it need not construe the term "impedance-compensated defibrillation pulse." We appreciate that the Board may believe that there is a conflict between this court's holdings and § 41.200(b). However, any conflict between the two must be resolved as directed in Agilent.

Agilent addressed when the Spina rule should apply in an interference proceeding. In Spina, this court considered which specification was relevant when interpreting a claim for a written description challenge. 975 F.2d at 856. The court agreed with the Board's approach: "When interpretation is required of a claim that is

copied for interference purposes, the copied claim is viewed in the context of the patent from which it was copied." 975 F.2d at 856. Though the Board chose the relevant specification on which to interpret Charles Spina's claim, the court reversed the Board's claim construction on different grounds. See id. at 857–58. After Spina, the court distinguished a written description challenge from a priority challenge under 35 U.S.C. § 102, holding that when a party challenges a claim's validity based on prior art, "the PTO and this court must interpret [a] claim in light of the specification in which it appears." Rowe v. Dror, 112 F.3d 473, 479 (Fed. Cir. 1997). Despite this distinction in Rowe, some parties still misunderstood when the Spina rule should apply.

In Agilent, this court again addressed the differences between a written description challenge and a validity challenge in interference proceedings. The court held: "[W]hen a party challenges written description support for an interference count or the copied claim in an interference, the originating disclosure provides the meaning of the pertinent claim language." Agilent, 567 F.3d at 1375 (emphasis added). In contrast, "[w]hen a party challenges a claim's validity under 35 U.S.C. § 102 or § 103, however, this court and the Board must interpret the claim in light of the specification in which it appears." Id. Consequently, the relevant specification for claim construction depends on whether a party in an interference proceeding challenges the written description under § 112, ¶ 1 or challenges validity under § 102 or § 103. Recall that PTO regulation requires the examiner to give a claim "its broadest reasonable construction in light of the application or patent in which it appears" regardless of the type of challenge in an interference proceeding. 37 C.F.R. § 41.200(b) (emphasis added).

2009-1241                                          14

Agilent made clear that 37 C.F.R. § 41.200(b) does not apply in an interference proceeding when one party challenges another's written description.  The court applied the Spina rule to a case with the same preliminary motion as in this case:  Philips filed a "preliminary motion challenging the validity of the copied claims on the grounds that the [Owen] application did not describe the invention adequately under § 112 ¶ 1."  Agilent, 567 F.3d at 1373.  As in Agilent, "[t]his case calls for application of the Spina rule, because the question is 'whether the copying party's specification[, Owen,] adequately supported the subject matter claimed by the other party[, the inventors of the '751 patent].'"  Id. (quoting Rowe, 112 F.3d at 479).

Based on their failure to apply our precedent, the Board and the district court fundamentally erred by summarily rejecting Philips' written description challenge.  A district court must base its analysis of written description under § 112, ¶ 1 on proper claim construction.  See Agilent, 567 F.3d at 1383 (reversing the district court's holding that an applicant's written description was adequate because the court erred in its claim construction); Intirtool, Ltd. v. Texar Corp., 369 F.3d 1289, 1296 (Fed. Cir. 2004) ("The district court's reliance on [an] erroneous [claim] construction . . . renders its finding that the . . . patent is invalid for failure to 'contain an adequate written description of the claimed invention' clearly erroneous.").  Here, the district court did not construe the disputed term at all.  Nor did the court analyze the Owen application's written description, assuming that the Board's procedural grounds obviated claim construction.  The district court failed to recognize that "the Board should decide issues relating to . . . patentability that are fairly raised and fully developed during the interference, despite the permissive language of § 135(a) with respect to patentability issues."  Gartside,

203 F.3d at 1317. Cardiac Science does not dispute that Philips fairly raised and fully developed its written description challenge before the Board. Consequently, the district court should have corrected the Board's error by deciding whether the Owen application's written description satisfied § 112, ¶ 1. On remand, the district court must construe the term "impedance-compensated defibrillation pulse" in light of the '751 patent written description and then determine whether the Owen application's written description satisfies § 112, ¶ 1.

The district court and the Board's legal errors stem from a failure to appreciate the consequences of the PTO's rulemaking authority. The PTO lacks substantive rulemaking authority. See Merck & Co., Inc. v. Kessler, 80 F.3d 1543, 1549–50 (Fed. Cir. 1996) ("[T]he broadest of the PTO's rulemaking powers—35 U.S.C. § 6(a)—authorizes the Commissioner to promulgate regulations directed only to 'the conduct of proceedings in the [PTO]'; it does not grant the Commissioner the authority to issue substantive rules." (quoting Animal Legal Def. Fund v. Quigg, 932 F.2d 920, 930 (Fed. Cir. 1991))). Unfortunately, the district court and the Board did not heed this court's prior warnings that PTO regulations disregarding Spina have limited applicability. In 1994, the PTO proposed an amendment to 37 C.F.R. § 1.633(a)—the precursor of 37 C.F.R. § 41.200(b)—to "specify that a claim shall be construed in light of the specification of the application or patent in which it appears." PTO Miscellaneous Amendments, 59 Fed. Reg. 50,181, 50,185 (1994). The PTO explained that "[t]his amendment would administratively set aside the judicially created rule of In re Spina . . . to the extent it held that the interference rules require that an ambiguous claim copied from a patent for interference purposes be construed in light of the disclosure of the

patent." Id. This amendment is currently codified at 37 C.F.R. § 41.200(b). In 1997, we explained that it "does not accept the PTO's statement that it can 'administratively set aside the judicially created rule of In re Spina.' Judicial precedent is as binding on administrative agencies as are statutes." Rowe, 112 F.3d at 479 n.2. We remind the district court and the Board that they must follow judicial precedent instead of 37 C.F.R. § 41.200(b) when a party challenges another's written description during an interference proceeding because the PTO lacks the substantive rulemaking authority to administratively set aside judicial precedent.

Cardiac Science similarly misunderstands this court's holdings in Agilent and Spina. At oral argument, Cardiac Science argued that Kubota v. Shibuya, 999 F.2d 517 (Fed. Cir. 1993), "annulled" Agilent. In its brief, Cardiac Science asserted that Kubota held that "right to make" cases like Spina do not apply to the preliminary motions period. However, Cardiac Science misunderstands Kubota's implications. Kubota, a panel decision, could not have overturned Spina and could not have preemptively "annulled" Agilent, which was decided about six years after Kubota. Moreover, Kubota did not hold that the "right to make" cases no longer apply during preliminary motions. The "right to make" line of cases concerned whether a party had the right to copy a generic claim to provoke an interference when the party's written description only disclosed a species, but claimed the genus. See, e.g., Squires v. Corbett, 560 F.2d 424, 434 (CCPA 1977) (holding that a party's "right to make" a copied claim depended on whether an application's disclosure supported the full scope of the claim under § 112, ¶ 1), superseded by statute, 35 U.S.C. § 135(a); 3A Donald S. Chisum, Chisum on Patents § 10.09[4][e][i] (2005). This line of cases addressed the PTO's interference rules before

the Patent Law Amendments Act of 1984. Some of the "right to make" cases held that under the old interference rules, a party copying claims to provoke an interference had the burden of proof during preliminary motions to show "by clear and convincing evidence that it had the 'right to make' the claim." Kubota, 999 F.2d at 521. Kubota rendered "right to make" cases inapplicable for the purpose of a party's burden of proof during preliminary motions. See id. at 522 ("Since it is no longer necessary to copy claims to provoke an interference, the 'old rule' 'right to make' decisions, to the extent they put the burden of proof on the non-moving party . . . are inapplicable to a 37 C.F.R. 1.633(a) motion alleging lack of written description support."). The parties in this case do not dispute the burden of proof. They dispute which specification is relevant for a written description challenge, and the district court's conclusion was legally incorrect.

Finally, we address whether the district court properly dismissed Philips' claim that the Board erred in denying Philips' contingent motion, numbered as motion 5 before the Board. We agree with Philips. The district court indeed erred in dismissing Philips' claim that Owen's claims 1–4, 13, 15, 20–22, and 39 are unpatentable because the Gliner patent anticipated those claims under 35 U.S.C. § 102 or at least rendered the claims obvious under § 103. The court opined that the Board properly dismissed motion 5 "because the contingency on which it was premised never arose." But the contingency never materialized because the Board failed to apply Spina and resolve the written description challenge as a properly raised issue of patentability. Moreover, Agilent makes clear that the district court should have addressed Philips' unpatentability claims under § 102 and § 103 regardless of whether it construed the term "impedance-compensated defibrillation pulse" in light of the '751 patent written description. In

<u>Agilent</u>, the court clarified that when a party challenges a claim's patentability under § 102 or § 103—in contrast to a written description challenge—a court "must interpret the claim in light of the specification in which it appears." 567 F.3d at 1375. Therefore, the district court must address Philips' argument that Owen's claims 1–4, 13, 15, 20–22, and 39 are unpatentable over the Gliner patent if the court concludes that the Owen application provides an adequate written description on remand.

## CONCLUSION

Because the district court erred by entering summary judgment and abused its discretion by holding that the Board can apply 37 C.F.R. § 41.200(b) and disregard the original disclosure's written description, we reverse and remand with instructions to construe the claims in accordance with <u>Agilent Technologies, Inc. v. Affymetrix, Inc.</u>, 567 F.3d 1366 (Fed. Cir. 2009).

<u>REVERSED</u> and <u>REMANDED</u>

## COSTS

Costs to the Appellant.